FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 03, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DON A. MOORE,<br><br>    Plaintiff,<br><br>    v.<br><br>C.U.S. JENSEN, as agent for WA STATE DEPARTMENT OF CORRECTIONS,<br><br>    Defendant. | No. 4:19-cv-05096-SAB<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Defendant's Motion for Summary Judgment on Exhaustion of Remedies Affirmative Defense, ECF No. 15. The motion was heard without oral argument. Plaintiff is proceeding *pro se*. Defendant is represented by Assistant Attorney General Jacob E. Brooks.

On April 29, 2019, Plaintiff, a prisoner at the Coyote Ridge Corrections Center, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. ECF No. 1. The Court directed service on July 16, 2019, finding that Plaintiff sufficiently stated a cognizable failure to protect claim under the Eighth Amendment. ECF No. 10.

Defendant now moves for summary judgment, asking the Court to dismiss Plaintiff's § 1983 claim because he failed to timely exhaust his administrative remedies and dismissing his negligence claim because Plaintiff failed to adhere to

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

the required 60-day waiting period before commencing this action after filing his tort claim with the State of Washington, as required by Wash. Rev. Code § 4.92.110. Plaintiff failed to file a timely response.[1]

### Plaintiff's Complaint

Plaintiff alleges that on the morning of May 3, 2016, in the Fox Unit, he was the victim of a "racially motivated hate crime." ECF No. 1 at 4. He asserts Defendant CUS Jensen had been informed that Plaintiff was being threatened by white supremacists in the days prior to the assault. *Id*. Plaintiff contends Defendant CUS Jensen knew Plaintiff was vulnerable to attack due to his frail physical condition. *Id*. at 6.

Plaintiff maintains there were no Corrections Officers on the floor or at the observation desk when the assault occurred, and it took several minutes for officers to response. *Id*. at 5. As a result, Plaintiff states he suffered broken facial bones requiring reconstructive surgery and the placement of mental plates and rods. *Id*. at 4. Plaintiff states he continues to suffer pain and constant drainage from his sinuses. *Id*. He asserts the negligent failure to protect him from an "announced assault." *Id*.

Plaintiff acknowledged that a prisoner grievance procedure is available at Coyote Ridge Correction Center but indicated he did not file a grievance as "it seems unnecessary to grieve an assault." *Id*. at 2. He stated he was afraid a grievance would draw the ire of Defendant and other correction officers. *Id*. at 3. He wrote he felt in danger of repercussion. *Id*.

### Motion Standard

42 U.S.C. § 1997(e) provides:

(a)  Applicability of administrative remedies

---

[1] Plaintiff was provided a "Notice to *Pro se* Litigants of the Summary Judgment Rule Requirements" on October 15, 2019. ECF No. 20.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2**

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Exhaustion is necessary even if the prisoner is seeking relief that the administrative process does not provide. *Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding administrative exhaustion is required even where grievance process does not permit award of money damages and prisoner seeks only money damages, as long as grievance tribunal has authority to take some responsive action). That said, an inmate is required to exhaust only *available* remedies. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (emphasis in original, citation omitted). To be available, a remedy must be available "as a practical matter"; it must be "capable of use; at hand." *Id.* (citation omitted).

Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead and prove." *Jones v. Bock*, 549 U.S. 199, 204 (2007). Once the defendant has carried that burden, the prisoner has the burden of production in which the prisoner must put forward evidence showing there is something in his or her particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Albino*, 747 F.3d at 1172. That said, the ultimate burden of proof remains with the defendant. *Id.*

If a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6). *Id.* at 1166. Otherwise, defendants must produce evidence proving failure to exhaust in order to carry their burden. *Id.* If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id.* If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts. *Id.*

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3**

If the district judge holds that the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed to the merits. *Id.* at 1171.

**Facts**

Defendant presented the following facts, which are undisputed since Plaintiff did not file a response.

1. Upon arrival at the Washington State Penitentiary ("WSP"), inmates receive briefing and information relating to prison policies and rules. *Declaration of Roberto Mendiola*, ECF No. 17. This is conducted by a WSP, West Complex ("WSP/WC") representative during Chain Intakes. *Id.* This includes a copy of the WSP/WC unit manual, Prison Rape Elimination Act (PREA), Group Violence Reduction Strategies memo, unit evacuation diagram, and the inmate is informed of two mandatory orientations—in unit orientation and Education department orientation. *Id.*

2. In addition to the Chain Intake briefings at WSP, all new inmates then meet with their classification counselor within 30 days of arriving at WSP to conduct a Classification Intake. *Id.* This meeting provides specific instruction on the use of such things as kites, messaging kiosk, offender complaints (grievances), in-cell emergency call button as well as a phone number for use in reporting complaints and other issues, release planning and available programming at WSP/WC. *Id.*

3. Inmates have to attend a mandatory orientation conducted in the living unit. In this orientation, they receive a copy of the WSP Orientation manual and a briefing about Classification, unit operations, custody determination, etc. *Id.* The second mandatory orientation is conducted in the Education building where representatives from the Education Department, Job Assignments, and Grievance Department provide a briefing regarding their department operations. *Id.*

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4**

4. Inmates meet with the unit's Facility Risk Management Team (FRMT), which includes the unit's CUS, Classification staff, Mental Health, and the unit Sergeant. *Id.* At this meeting, rules, policies, and classification information is again communicated to the inmates. *Id.*

5. Plaintiff attended these briefings as part of his intake at WSP. *Id.*

6. Plaintiff met with Mr. Mendiola on November 5, 2014. *Id.* Mr. Mendiola communicated the grievance procedure to him. *Id.*

7. After Plaintiff was assaulted on May 3, 2016, he was assigned to the Intensive Management Unit (IMU). He was discharged from the IMU on May 20, 2016. *Id.*

8. The IMU is staffed by a CUS, Sergeant, Classification counselors, at least one DOC health care provider and at least 6 custody officers. Custody officers conduct half hour checks. *Id.*

9. The health care providers, custody officers, and corrections counselors in the IMU are available to help offenders with the grievance process. *Id.*

10. Within the IMU, inmates have access to request forms, kites, and grievances. *Id.* Inmates located in the IMU are able to submit grievances. *Id.*

11. In Unit F, the unit of WSP that Plaintiff was located, grievance forms and the grievance box are available in the unit dayroom which is a common area for ease of inmate access. The kite box is located next to the grievance box for ease of inmate access. *Id.*

12. The Washington Offender Grievance Program (OGP) allows prisoners to file a grievance for inmate-on-inmate assaults. *Declaration of Dale Caldwell*, ECF No. 16.

13. Plaintiff did not file a grievance regarding the assault that took place on May 3, 2016. *Id.*

## Analysis

Defendant has met his burden of showing that a grievance procedure was

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

available to Plaintiff and that Plaintiff failed to exhaust his administrative remedies. Consequently, the burden shifts to Plaintiff to show that there was something in his particular case that made these administrative remedies effectively unavailable to him. He has failed to do so.

As such, Plaintiff's § 1983 claim is dismissed for failure to exhaust. The Court declines to exercise supplemental jurisdiction over Plaintiff's negligence claim.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment, ECF No. 15, is **GRANTED**.

2. Plaintiff's Complaint is **dismissed,** without prejudice.

**IT IS SO ORDERED.** The Clerk of Court is directed to enter this Order, forward copies to Plaintiff and counsel, and close the file. The Court finds that an appeal of this Order would not be taken in good faith.

**DATED** this 3rd day of December 2019.



Stanley A. Bastian
United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**